FILED

2006 Mar-31  AM 09:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **TERRY LITTLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case Number:  CV 03-S-728-S** |
| | ) | |
| **RALPH HOOKS,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This is a civil action pursuant to 42 U.S.C. § 1983 in which Terry Little ("Plaintiff") alleges that rights, privileges, or immunities afforded him under the Constitution or laws of the United States have been abridged during his incarceration at St. Clair Correctional Facility in Springville, Alabama.  Plaintiff names as defendants Governor Bob Riley ("Riley"), Prison Commissioner Donal Campbell ("Campbell"), Warden Ralph Hooks ("Hooks"), former Governor Don Siegelman ("Siegelman"), and former Prison Commissioner Michael Haley ("Haley").  Plaintiff seeks compensatory, declaratory, and injunctive relief.

On December 5, 2003, the magistrate judge entered an Order for Special Report (Doc. no.15), directing that copies of the Complaint in this action be forwarded to Defendants, and requesting Defendants to file a Special Report responding to the

factual allegations of Plaintiff's Complaint.  On February 13, 2004, Defendants Riley, Campbell, and Hooks filed a Special Report, along with pertinent documents and affidavit.  (Doc. no. 27.)  On March 8, 2004, the court entered an Order notifying the parties that the Special Report filed by Defendants Riley, Campbell, and Hooks would be construed as a motion for summary judgment, and Plaintiff was notified of the provisions and consequences of Rule 56 of the Federal Rules of Civil Procedure. (Doc. no. 37.)  Plaintiff did not file a response.

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law.  Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party.  *See Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The burden of proof is upon the moving party to establish his *prima facie* entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not

merely rest upon his pleadings, but must come forward with evidence supporting each essential element of his claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 234 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989).  Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.  "In such a situation, there can be 'no genuine issues as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (*quoting Celotex Corp.v. Catrett*, 447 U.S. 317, 322 (1986)).  However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment.  *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986).

## FACTS FOR SUMMARY JUDGMENT PURPOSES [1]

Plaintiff is an inmate at St. Clair Correctional Facility ("St. Clair") in Springville, Alabama. He has sued Governor Bob Riley, Prison Commissioner Donal Campbell, and Warden Ralph Hooks in their official and individual capacities, and he has sued former Governor Don Siegelman and former Prison Commissioner Michael Haley in their individual capacities. Plaintiff alleges that the defendants violated his right to be free from cruel and unusual punishment by subjecting him to "poor prison conditions" at St. Clair Correctional Facility. (Compl. ¶ 5.) Plaintiff presents specific factual allegations in support of his assertion that his constitutional rights have been violated.

### A.   Plaintiff's Complaint.

#### 1.   Prison Overcrowding.

Plaintiff contends that the Alabama Department of Corrections' records show that the maximum inmate capacity for St. Clair is 984 persons.[2] Warden Ralph Hooks states in a memo to Albert Butler dated June 21, 2002, that St. Clair was then housing

---

[1]   The following facts are undisputed or, if disputed, construed in a light most favorable to Plaintiff. Any factual disputes made by a particular defendant shall be addressed in footnote form at the appropriate time.

[2]   Plaintiff also includes the Alabama Department of Corrections January 2002 Monthly Report of Facility Operations, which confirms that St. Clair's "designed capacity," which includes the original architectural design plus renovations, is 984. (Compl., Ex. A.)

1,322 inmates.  (Compl., Ex. B.)  Hooks also addressed the subject of additional

inmates being placed at St. Clair and, because the contents of this memorandum goes

to the heart of plaintiff's allegations, the entire document is set out below.

To:   Butler, Albert S.

St. Clair Correctional Facility currently houses 1322 inmates.  The
designed capacity for the facility is 984.  We are currently 38 officers
short of authorization.  The current condition also exacerbates the officer
retention problems.  Recruiting officers to work in such deplorable and
dangerous conditions is difficult at best.

The wardens were advised in a meeting on June 20, 2002, that 1850
inmates would have to be absorbed into the system by July 14, 2002, due
to a court order.  Any increase in the number of inmates at St. Clair is
unacceptable.  If forced to receive any additional inmates, the below
outlined options have been assessed.

The gymnasium at St. Clair could be utilized to house inmates.
However, this proposal presents several potential problems.  Placing
inmates in such an "open bay" setting would prevent a lock-down if
needed.  The setting also invites increased violent assaults, thefts and
sexual assaults.  It also enhances the risk of escape which jeopardizes
public safety.  This alternative would also require additional officers,
showers and bathroom facilities.

The other alternative would be to house three inmates to a cell.  The
upper tiers of the cell blocks have 11 ft. ceilings which would provide
more breathing room than the lower tiers with 8 ft. ceilings.  However,
this would increase the temperature in the cells which is already at an
unbearable level for officers and inmates.

We could add an additional 192 beds without having to add shower/bath
facilities.  Placing three inmates to each cell would certainly increase the
number of assaults due to such compressed living conditions.  The
additional inmates would also place a significant burden on the sewage

treatment plant, laundry, dining facility and other support functions. However, this option is recommended over the gymnasium option.

Correctional doctrine has always purported that staffing shortages, lack of resources/funding and overcrowding are all conditions conducive for a riot. St. Clair already has all the ingredients for a riot without any additional inmates.

The legislature has miserably failed to provide the needed funding to address the myriad of correctional problems. When a riot occurs, the blood of the officers and the inmates will be on the hands of the legislature.

Only a spark is needed to unleash hell in one of our prisons.

Warden Ralph Hooks

(Compl., Ex. B.)

Plaintiff asserts that between January 8 and January 10, 2003, "St. Clair Correctional Facility received between 100 to 200 new beds . . . . [T]he majority of those beds were installed into inmate cells . . . already housing two (2) inmates. The approximate size of the cells which now house three (3) inmates is 8 x 10 feet." (Compl. ¶¶ 10-11.) Plaintiff is now housed in a three bed cell. (Compl. ¶ 13.)

Plaintiff further explains that St. Clair "house[s] prisoners in four (4) living buildings . . . ." (Compl. ¶ 13.) Each building is divided into four (4) sections and each section is designed to house 24 inmates, each in single man cells. (Compl. ¶ 14.) At the time he filed his Complaint, Plaintiff indicated that all cells housed two (2)

inmates and many were housing three (3) inmates.[3] (Compl. ¶ 14.) Plaintiff is housed in building G4, Section D, Cell # 243. (Compl. ¶ 13.) In building G4, "the defendants have placed an additional 12 beds and inmates per [section], which would amount to 60 inmates living in a[n] area designed to house 24 inmates . . . ." (Compl. ¶ 14.) As a result, 240 inmates are living in a building which is designed for 96 inmates. (Compl. ¶ 15.) Plaintiff states,

> In this living area, each Section consist[s] of 24 single cells, [which are] approximately 8 x 10 feet . . . . [There are] 12 single cells [o]n the lower [level], and 12 single cells [o]n the upper [level]. There is approximately ten (10) times more footage area [o]n the lower level of these sections, but the triple celling is conducted [o]n the upper [level], creating a much more intolerable condition. Within each of these single cells are three sep[a]rate bunks (beds), a toilet and sink. In each of these single cells three inmate[s] are placed as their assigned living area. Inmates are also required to store all of their personal property in these single cells. Due to these close quarters[,] personal injuries are common [place], as there is b[are]ly enough room for three men to stand, [much] less live.

(Compl. ¶ 46.)

### 2. Inadequate Security Staff.

Plaintiff also makes allegations concerning inadequate security staff. (Compl. ¶ 15.) He states that there is normally one (1) correctional officer and, at the most, two (2) officers assigned to guard four units. Plaintiff contends that since the building

---

[3]   *See*, Compl., Ex. C (Plaintiff's graph of all four buildings, sections, and the number of inmates housed in each).

is separated into four units, enclosed by walls, the number of officers is insufficient to provide security to each unit. (Compl. ¶ 15.) Plaintiff goes further to state that due to the security shortage, correctional officers are required to work overtime, making them too tired to respond to threats and assaults. (Compl. ¶¶ 33-34.) Plaintiff contends that some guards regularly sleep during their shifts due to the excessive number of hours. (Compl. ¶¶ 33-34.)

Plaintiff also alleges that homosexuality, rapes, and assaults have increased rapidly due to the conditions of confinement. Plaintiff states that many of these acts of violence go unreported or unnoticed by correctional officers. (Compl. ¶ 68.) Plaintiff contends that he has suffered physical and mental problems as a result of these alleged constitutional violations. (Compl. ¶ 69.)

### 3. Plaintiff's Other Allegations of Constitutional Violations.

Plaintiff claims that his living area "ha[s] inadequate heating and ventilation, [is] unsanitary, [and] create[s] both fire and safety hazards . . . ." (Compl. ¶ 16.) He contends that his building also is "deficient in plumbing" (Compl. ¶ 47.), is "infested with vermin and insects," and that "the practice of triple celling [has] [led] to increase[d] stress, tension, communicable disease, . . . . [and] involuntary exposure to environmental tobacco smoke (ETS)." (Compl. ¶¶ 50-51.) Additionally, Plaintiff states that "peeling, lead-based, and dangerous paint from the prison buildings are

creating a health and safety [hazard]." (Compl. ¶ 31.)

Plaintiff contends that Defendants  provide him with an "inadequate law library" and do not provide him with " adequate assistance from persons trained in law." (Compl. ¶ 61.) Plaintiff also alleges that St. Clair has violated his "constitutional rights to access [the] court[s]" in that they have failed "to adhere to the law of Act 2001-977, and Governor [Siegelman's] Executive Order [N]o. 62." (Compl. ¶ 62.) Plaintiff argues that Defendants have failed to "expand the number of work release centers for the increasing number of male prisoners who qualify for work release. (Compl. ¶ 38.)

Plaintiff contends that Defendants have been, and continue to be, deliberately indifferent to the unconstitutional conditions of confinement described herein above. For instance, Plaintiff states that this court, presumably federal court, has repeatedly ordered Defendants to remedy the overcrowding "that has been endemic in Alabama's prison system for the past 30 years." (Compl. ¶ 37.) Instead of remedying the problem, "defendants . . . have allowed overcrowding to worsen steadily." (Compl. ¶ 38.) Plaintiff alleges that, after allowing inmates to "languish" in county facilities, "[u]nder now extreme pressure from the courts, the [defendants] have now begun to crowd prisoners  from those county jail[s] into overcrowded, and unsafe prison facilities." (Compl. ¶ 38.) Plaintiff brings his claims under the Eighth and Fourteenth

Amendments.  (Comp. ¶¶ 70-73.)  Plaintiff requests class certification, appointment of counsel, declaratory judgment, an injunction directing Defendants to remedy the alleged constitutional violations, and monetary damages.  (Compl.  at 13;  Doc. no. 3, Pl.'s Mot. for Class Consideration and Appointment of Counsel.)

**B.     Defendants' Special Report in Response to Plaintiff's Complaint.**

**1.     Former Governor Don Siegelman and Former Prison Commissioner Michael Haley**.

On December 15, 2003, an Order for Special Report was mailed to Defendants Siegelman and Haley at the addresses provided by Plaintiff.  (Doc. no. 16.)  On March 8, 2004, the magistrate judge entered an Order (Doc. no.38) in which Plaintiff was notified that, according to counsel for Defendants, Siegelman and Haley were no longer affiliated with the Department of Corrections or State government and, as such, counsel was not authorized to accept service of process on behalf of either Defendant. (Doc. nos. 38 & 27.)  Plaintiff was afforded fifteen (15) days from the entry date of the notification to provide an address for Defendants Siegelman and Haley.  To this date, Plaintiff has not produced an address for these defendants. Therefore, all claims against Defendants Siegelman and Haley are due to be dismissed without prejudice for lack of prosecution.

**2.     Defendants Riley, Campbell, and Hooks**.

On February 13, 2004, Defendants Riley, Campbell, and Hooks filed a Special

Report, in which they assert their factual and legal response to Plaintiff's allegations. (Doc. no. 27.)   In the report, Defendants deny that they have been deliberately indifferent "to the safety and welfare of state inmates housed in ADOC [Alabama Department of Corrections] facilities." (Doc. no. 27 at 2.) While Defendants concede that St. Clair is overcrowded and understaffed, they argue that inmates at the facility are living in a "reasonably safe and health[y] environment for state prisoners." (Doc. no. 27 at 2.) Defendants contend that while current conditions are not ideal, neither are they unconstitutionally inadequate. (Doc. no. 27 at 2.) Defendants argue that St. Clair's overcrowding is the result of "budgetary constraints" that the Department of Corrections is powerless to resolve as funding is within the purview of the State Legislature. (Doc. no. 27 at 1-2.) Defendants assert that the "ADOC submits budget requests based upon its projected needs; whether those requests are met is entirely beyond its control." (Doc. no. 27 at 1-2.)  Moreover, Defendants claim they are entitled to absolute and qualified immunity and that "Plaintiff's claim, in part, is based upon the theory of *respondeat superior*, and thus not actionable under 42 U.S.C. 1983." (Doc. no. 27 at 2.)

In support of their Motion for Summary Judgment, Defendants present the affidavit of Defendant Ralph Hooks, Warden of St. Clair Correctional Facility, and other related documents.  Defendant Hooks' January 28, 2004, affidavit states in

pertinent part:

> Inmate Little complained of prison overcrowding.  It is correct that there
> is an overcrowding problem at St. Clair.  We currently have 192 cells
> with three [inmates] to each cell.  It certainly [is] not an optimum
> security situation.  Overcrowding could certainly create a situation
> conducive for a riot.  Overcrowding can also exacerbate communicable
> diseases and the possible spread of Tuberculosis. [Plaintiff] also
> complained that the facility was unsanitary.  The last three evaluations
> from St. Clair Health Department are as follows: 90%, 96%, and 90%.[4]

> Inmate Little complained of inadequate heating and ventilation.  There
> is adequate heat at St. Clair and there are also ventilation fans in the
> cellblocks.

> [Plaintiff] further grieved that there is inadequate security at St. Clair
> Correctional Facility.  Based on the manning formulas provided by the
> Alabama Department of Corrections, the authorized manning level
> should be increased by 137 Correctional Officers.

> The last three evaluations from the St. Clair Health Inspector [regarding
> the prison kitchen] are as follows: 80%, 85% and 88%.[5]  The facility has
> a pest control contract with Terminix to control vermin and insects.[6]

> [Plaintiff] further alleged inadequate fire prevention.   Correctional
> Officers are on duty 24 hours a day and can rapidly release the inmates
> in case of a fire.  Inmate paperwork/property is kept to a minimum to
> prevent a ready source of fuel.  Items built with wood are also limited.

---

[4]   Hooks' assertions are verified by attached copies of Alabama Department of Public Health's Inspection Reports of the facility for March and December 2002, and April, August, and December, 2003.  (Doc. no. 27.)

[5]   Attached to the Special Report are copies of the Alabama Department of Public Health's Inspection Reports of St. Clair's kitchen facilities for the months of March and December 2002, and April, August, and December 2003.  (Doc. no. 27.)

[6]   Attached exterminator's checklists and Terminex billing statements show the kitchen is being inspected and treated to prevent vermin and insects.  (Doc. no. 27 at 19-53.)

Fire drills are also conducted.

[Plaintiff] complained that inmates spend long periods of time confined in small cells. We do have segregation units where inmates who are in disciplinary segregation and administrative segregation do spend long hours in confinement due to disciplinary action or for the protection of the inmate, the staff or other inmates.

Inmate Little alleged that the G-5 dormitory housed over 100 inmates and has no fire exits. The G-5 unit actually has 58 inmates assigned beds, not 100. The unit has two exits. One exit leads to the population yard and the other exit is through the infirmary.

Inmate Little alleged that peeling lead paint is creating a health hazard. There are many areas of the facility which require painting. I have had a paint crew continuously scraping the walls and painting for over the past two years.

Inmate Little claimed that a shortage of security staff requires officers to work overtime. Unfortunately, due to security shortages, overtime staff is required to work in order to maintain a reasonable security level.

Inmate Little alleged that there are numerous assaults on inmates and staff. During the month of December 2003, there were six assaults at St. Clair Correctional Facility. This is not an excessive number for a maximum security prison[.]

Inmate Little stated that overcrowding has worsened. I have no control over the overcrowding situation. He also stated that inmates are allowed to languish in county jails. Neither do I have control over that situation.

Inmate Little claims that the defendants have failed to expand work release. I have no control over increasing work release beds. He further alleged that the defendants have failed to implement Legislative Laws specifically Bill 61 & Act 2001-977. I have no control over the implementation of those Legislative Acts.

Inmate Little alleges that the buildings are deficient in plumbing, air and

ventilation.  The buildings are not air conditioned but they do have windows and ventilation fans.  St. Clair Correctional Facility is over 20 years old, plumbing problems do occur, but they are repaired in a timely manner by maintenance personnel.

Inmate Little complained that vermin and insects have infested G1, G2, G3, and G4 cellblocks.  The Facility has a contract with Terminex to control vermin and insects in the population blocks.[7]

Inmate Little alleged that inadequate policies by defendants create a health risk by subjecting him to [ ] tobacco smoke.  There are policies in place prohibiting inmates from smoking inside the cellblocks. Disciplinary action is initiated to inmate violators.

Inmate Little states that the inmate Law Library at St. Clair Correctional Facility is inadequate and there is no one trained in the law to provide assistance. St. Clair Correctional Facility spends an average of $1100.00 a month to ensure the Library is sufficient for inmates' legal access.  I also placed a retired Army Lieutenant Colonel who was a Judge Advocate General Officer in the Military to the Law Library.  He is certainly well versed in the Law and provides the needed assistance.

Inmate Little alleged that the number of sexual assaults have increased since inmates have been placed three to a cell.  Sexual assaults have not increased dramatically since inmates have been three to a cell.

Inmate Little alleged that the incidents of indecent exposure/exhibitionism have increased due to the overcrowding.  The number of indecent exposure/exhibitionism cases have not increased dramatically since inmates have been three to a cell.

Inmate Little claims that homosexuality rapes and assaults "run rampant"

---

[7]   A review of the exterminator's checklists and Terminex billing statements show that the kitchen, laundry, infirmary, prison offices, and prison staff housing are inspected and sprayed regularly with pyrethrine.  (Doc. no. 27.)  However, only G-1 (C-Side) and G-3 cellblocks were sprayed at all between January 2003 and February 2004, and then only once. *Id.*  The segregation cells were sprayed in August and September 2003.  (Doc. no. 27.)

at [St.] Clair Correctional Facility.  That is certainly not the case.  The
number of assaults for the year of 2003 was fifteen.  The number of rapes
was zero.  This is certainly not "rampant."  The number of assaults in
2002 was eighteen so the assaults have decreased.

Inmate Little alleged that he has suffered gross mental and physical
problems due to the overcrowding.  I'm not sure what physical problem
he is referring to caused by the overcrowding.  However, he can sign up
for sick call for any physical problems, which may occur.  I referred
inmate Little to the St. Clair Psychologist, Dr. David Sandefur, to have
inmate Little mentally evaluated.  I confirmed that Dr. Sandefur did meet
with inmate Little.

(Hooks Aff., Doc. no. 27.)

## DISCUSSION

### CLASS CERTIFICATION

Plaintiff requests this court to certify a class.  (Doc. no. 3.)  One basic

requirement for class action certification is that the representative parties must fairly

and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(4).  Courts

generally consider the competency of a layman representing himself to be y too

limited to allow him to risk the rights of others.  In fact, it has been held to be plain

error to permit an imprisoned litigant, who is unassisted by counsel, to represent his

fellow inmates in a class action.  *See Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th

Cir. 1975); *see also Wallace v. Smith*, 145 Fed. Appx. 300, 302 (11th Cir. 2005).

Thus, class certification of *pro se* plaintiffs would be inappropriate, in that the rights

of parties included in the class may be jeopardized by unqualified representation.

Accordingly, Plaintiff's request for class certification (Doc. no. 3) is due to be denied without prejudice.

APPOINTMENT OF COUNSEL

In his original Complaint and by motion, Plaintiff requests that counsel be appointed to represent him individually. (Doc. nos. 1 & 3.) However, "[a]ppointment of counsel in a civil case is not a constitutional right.  It is a privilege that is justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner."  *Fowler v. Jones*, 899 F.2d 1088, 1096 (11th Cir. 1990).  The district court "should appoint counsel only in exceptional circumstances."  *Dean v. Barber*, 951 F.2d 1210, 1216 (11th Cir. 1992).  Further, the United States Supreme Court has held that an attorney may not be compelled to accept appointment in a case filed pursuant to 42 U.S.C. § 1983.  *Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989).

In the present action, there are no "exceptional circumstances" that would require the court to appoint counsel for Plaintiff.  *Dean v. Barber*, 951 F.2d at 1216.  While Plaintiff states in his motion for counsel (Doc. no. 3) that he is unlearned in the law, he has clearly been able to file and maintain this action thus far.  Plaintiff's personal claims are not "so novel or complex as to require the assistance of a trained

practitioner." *Fowler v. Jones*, 899 F.2d at 1096; *see also Ulmer v. Chancelor*, 691 F.2d 209, 213 (5th Cir. 1982). As such, Plaintiff's requests for appointment of counsel (Doc. nos. 1 & 3) are due to be denied without prejudice.

<u>CONDITIONS OF CONFINEMENT – FOURTEENTH AMENDMENT</u>

Plaintiff alleges that the poor prison conditions violate his Eighth Amendment right to be free from cruel and unusual punishment while incarcerated. Plaintiff brings a separate due process claim under the Fourteenth Amendment in connection with the same conditions of confinement. It does not appear, however, that an independent constitutional due process claim under the Fourteenth Amendment is necessary to address Plaintiff's allegations as the Eighth Amendment "serves as the primary source of substantive protection to convicted prisoners." *Whitley v. Albers*, 475 U.S. 312, 327 (1986). "Because the Eighth Amendment, as 'an explicit textual source of constitutional protection,' defines the limits of government action, it controls over 'the more generalized notion of substantive due process.'" *Austin v. Johnson*, 328 F.3d 204, 210 n.10 (5th Cir. 2003) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Fourteenth Amendment is pertinent to this action to the extent that it provides the vehicle through which the Eighth Amendment's proscription against cruel and unusual punishment is applicable to the States, but the substantive standards are provided by the Eighth Amendment.

CONDITIONS OF CONFINEMENT – EIGHTH AMENDMENT

Plaintiff contends that he has been subjected to poor prison conditions at the St. Clair Correctional Facility and, as a result, Defendants have violated his Eighth Amendment right to be free from cruel and unusual punishment. Conditions of confinement claims by convicted prisoners are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993). In order to establish an Eighth Amendment violation, a plaintiff "must prove three elements: (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual punishment], (2) the defendant[s'] 'deliberate indifference' to that condition, and (3) causation." *LaMarca v. Turner,* 995 F.2d 1526, 1535 (11th Cir. 1993) (*quoting Wilson v. Seiter*, 501 U.S. 294, 303 (1991), *cert. denied*, 510 U.S. 1164 (1994). As the court has rejected class certification, the Eighth Amendment analysis here focuses on plaintiff's personal assertion of his rights and whether those rights have been infringed for him personally. The court will address each of the necessary elements in turn.

1. Conditions of confinement that inflict unnecessary pain or suffering, constituting cruel and unusual punishment.

Whether a particular condition of confinement constitutes cruel and unusual punishment is an objective inquiry. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Prison conditions amount to cruel and unusual punishment only when they result in

Page 18 of 25

"unquestioned and serious deprivation of basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).   While prison officials must furnish prisoners with reasonably "adequate  food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates,'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (*quoting Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984), the Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. at 349.  As the Eleventh Circuit Court of Appeals has observed, "[t]he Constitution does not require that prisoners, as individuals or as a group,  be provided with any and every amenity which some person may think is needed to avoid mental, physical, and emotional deterioration." *Harris v. Thigpen*, 941 F.2d 1495, 1511 (11th Cir. 1991). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.  To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. at 347.

Plaintiff argues that he is presently assigned, along with two other inmates, to a cell originally designed for one person.  Plaintiff contends that the cramped conditions pose a fire hazard, contribute to the spread of communicable diseases, and increase violent and sexually deviant behavior.  Moreover, Plaintiff asserts that there is a shortage of correctional officers which creates further safety hazards as the

officers are unable to provide adequate security and protection. Plaintiff further alleges that conditions at St. Clair include: inadequate plumbing, heating, air, and ventilation; substandard fire prevention; peeling, lead-based paint; exposure to environmental tobacco smoke; vermin and insect infestation; unsanitary conditions; lack of work release program expansion; an inadequate law library; and, no access to those persons trained in the law.

After careful consideration of Plaintiff's claims, the court finds that there is no objective evidence that Plaintiff's personal predicament involves generally unsanitary and unsafe conditions. Defendants do not dispute that St. Clair Correctional Facility is overcrowded and in need of more correctional officers. However, Plaintiff has not alleged that he, personally, has been subjected to or threatened with violence, or even put at a heightened risk of serious harm, due to overcrowding. Plaintiff has not alleged any type or threat of physical altercation between him and his cellmates, or that such altercation was a result of overcrowding and not some other factor. He has not alleged that correctional officers fail to protect him. Indeed, there is no evidence that Plaintiff has personally been subjected to even the mere threat of future violence due to overcrowding.

Additionally, there is no evidence that Plaintiff has been exposed to any form of communicable disease or infection as a result of overcrowding or from being

assigned to a cell with two other inmates.  There is no evidence that the marginal increase in the number of inmates in a cellblock measurably increases the risk of disease over what would have existed anyway.  There is no evidence that in plaintiff's cellblock there has been any threat of disease.  In sum, Plaintiff's claims do not rise to the level of an Eighth Amendment violation.

Moreover, the court finds that Plaintiff makes only general and conclusory allegations regarding inadequate plumbing, heating, air, and ventilation, substandard fire prevention, peeling, lead-based paint, exposure to tobacco smoke, vermin and insect infestation,[8] unsanitary conditions, lack of work release programs,[9] an inadequate law library, and access to courts and persons trained in the law.  Plaintiff has not set forth any facts that would demonstrate how, and to what extent, these conditions affected him personally.  Vague, general, or conclusory allegations are insufficient to merit relief under § 1983.  *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).

2. Defendants' deliberate indifference.

Even if Plaintiff had established that the prison conditions constituted cruel and

---

[8]   Documents submitted by Defendants regarding pest control do not establish that the inmates' living quarters are tended to on a regular basis, if at all; however, Plaintiff has not set forth any evidence of injury sustained as a result of vermin and insect infestation.

[9]   Plaintiff's claims regarding the lack of work release centers coincides with his claims regarding overcrowding and therefore fails to state a claim for the same reasons.

unusual punishment, or that his rights otherwise were infringed, he has not shown that Defendants were deliberately indifferent to those conditions. Whether prison officials are deliberately indifferent to prison conditions is a subjective inquiry. *See Wilson v. Seiter*, 501 U.S. 294, 299 (1991). "To be deliberately indifferent, a prison official must knowingly or recklessly disregard an inmate's basic needs so that knowledge can be inferred." *LaMarca v. Turner*, 995 F.2d at 1535. In order to establish that an official was deliberately indifferent, "a plaintiff must prove that the official possessed knowledge both of the infirm conditions and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" *Id.* at 1535 (*quoting Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985)). *Accord Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994).

A showing of such official conduct is absent from the record. Upon learning that St. Clair would receive a substantial number of additional inmates, Warden Hooks explored several alternatives for housing additional inmates in a humane and safe manner. (Compl., Ex. B.) Defendants also maintain reasonable security levels by requiring overtime. Defendants acknowledge that plumbing problems do occur given that the facility is over twenty (20) years old, but that repairs are made in a timely manner by maintenance personnel. Defendants state that inmate facilities are not air-

conditioned but do have windows, ventilation fans, and adequate heating.  Defendants contend that correctional officers are on duty 24 hours a day and can rapidly release inmates in case of fire and, as a preventive measure, inmate paperwork and property as well as wood items are kept to a minimum and fire drills are conducted.  Paint crews have been continuously scraping the walls and painting for the past two years. Furthermore, St. Clair has policies which prohibit inmates from smoking in the cell blocks and violators are disciplined.  St. Clair's facilities have received health ratings of 90%, 96%, and 90% on 2003 inspection reports conducted by the Alabama Department of Public Health.[10]

Other than his inadequate conclusory allegations, Plaintiff has not come forward with any specific factual evidence to dispute Defendants' contentions.  The fundamental problem with St. Clair Correctional Facility, as with most other penal institutions in the State of Alabama, is the unwillingness of the Legislature to appropriate adequate funding.  These defendants, Governor Riley, Commissioner Campbell, and Warden Hooks, have done everything possible to maintain the security and inhabitability of the St. Clair facility within the bounds of the limited funding they receive.  Plainly, it is not they who are indifferent to prison conditions in Alabama.

---

[10]     St. Clair also received 92% and 94% on its inspection reports for March and December 2002, respectively.

There is simply nothing else they have the power to do without the help of the Legislature.

Consequently, for purposes of asserting his personal Eighth Amendment rights, Plaintiff has not proven the second element of his Eighth Amendment claim. He has not shown that the named defendants in this action are deliberately indifferent to the conditions in which he lives.

3. <u>Causation</u>.

The court's conclusions that Plaintiff has failed to establish that Defendants violated his personal constitutional rights under the Eighth Amendment and failed to show that Defendants were deliberately indifferent to his rights removes the need to reach the remaining question of causation. In the absence of a showing that plaintiff has personally suffered a constitutional deprivation, it cannot be established that Defendants caused any such deprivation.

<u>CONCLUSION</u>

This case demonstrates that a storm is rising on the horizon for prison management in Alabama. The State cannot continue indefinitely to delay a solution to the problem of prison overcrowding by adding more and more beds to less and less space. At some point the dangerous combination of overcrowding and understaffing is going to have explosive consequences. Although this plaintiff has failed to show

that he personally has suffered the "unquestioned and serious deprivation of basic human needs" necessary to make out an Eighth Amendment claim, there can be little question that the conditions in Alabama's prisons continue to deteriorate and someday will indeed result in such a deprivation.  In this case, however, Defendants are entitled to judgment as a matter of law with respect to Plaintiff's Eighth Amendment claims of cruel and unusual punishment.

A separate order will be entered granting summary to the defendants and dismissing this case.

The Clerk is DIRECTED a copy of the foregoing to the plaintiff.

DONE this 30th day of March, 2006.

_____
United States District Judge